## REEVES v. HOWARD COUNTY REFINING CO.

### No. 63.

District Court, N. D. Texas, Abilene Division.

May 7, 1940.

Davidson & McMahon and Hudson Smart, all of Abilene, Tex., for plaintiffs.

Coffee & Coffee, of Big Spring, Tex., for defendant.

DAVIDSON, District Judge.

The Court understands the law to be that this Act (29 U.S.C.A. § 201 et seq.) is what the name implies, a minimum wage and hour Act, and that parties may contract with reference to hours and compensation at will, provided the compensation to be paid is not less than the scale fixed by the law. It thus becomes important for the determination of the rights of the several employees involved to arrive at the nature of the contract or agreement under which they were working, and have been working since the passage of the Act.

C. C. Reeves testified that he had for some time been working for a flat salary of $150 per month. That on one or more occasions he had acted as superintendent or assistant superintendent, but for only a very short time. That his duty was to treat the gasoline in process of distillation. That soon after the passage of this law, about the 2d of November, 1938, he had a discussion with his employers about his compensation, in which he stated that he would like to have the benefit of shorter hours provided for in the law, and his foreman told him that in the event he took shorter hours it would be necessary to make a reduction in his pay. That no further discussion took place and he continued to labor upon a flat salary of $150 per month, and that he never asked for any other compensation during the time he was so employed. Considering the number of hours actually worked, this pay exceeds the minimum time and overtime provided by the Act, and therefore complied with the Act, and the Court finds that C. C. Reeves is not entitled to recover anything from defendant, he having entered into a contract for a stipulated consideration which is in excess of the minimum wage fixed by law, and that he had a right to make such agreement, and having entered into such agreement, he is bound thereby.

J. A. Kinard was working on the wage scale of $90 per month, his principal duties being night watchman, but he frequently, for several hours, did other work in connection with the process of refining. He was to serve for 12-hour periods at a fixed salary of $90 per month. This was an unlawful contract, in that the compensation allowing for the number of hours that he worked, was less than that fixed by the minimum wage. There being, therefore, no binding contract affecting this plaintiff, he is entitled to the minimum wage, plus overtime, during the period of his employment. From October 24, 1938, to October 24, 1939, he worked regular time 2,288 hours, which at 25¢ per hour, would be $572; during same period he worked 1,980 hours of overtime, for which he is entitled to be compensated at the rate of 37½¢ per hour, which would amount to the sum of $742.50. After October 24, 1939, to December 18, 1939, the said J. A. Kinard worked 336 regular-time hours, for which he was entitled to be paid at the rate of 30¢ per hour, which amounts to the sum of $100.80, and he, during the same period, worked 276 overtime hours, for which he is entitled to be compensated at the rate of 45¢ per hour, which would amount to the sum of $124.20. The total pay to which J. A. Kinard was entitled if figured on the basis of minimum wage and overtime provided by the Act, was the sum of $1,539.50. He was paid the sum of $1,239, which leaves a difference of $300.50, plus penalty of $300.50.

Allen McClinton and Artie Fuqua each in turn operated the still for refining gasoline from the crude oil, each working on an 8-hour shift. While engaged in operating the still they were entitled to be paid upon a basis of $160 per month. At times they were not operating the still and would be engaged in firing, or yard work. During this period they were to work for 40¢ per hour. They usually worked an entire day when they started either one of these different lines of labor.

The court finds that these employees entered into a contract upon this basis and that for the days at which they worked at the still they are entitled to be paid upon a basis of $160 per month for the number of hours employed, and all the overtime to be compensated on that basis under the law; and the same compensation for all the days at which they worked as fireman or in the yard on the basis of 40¢ per hour, and in the event of overtime to receive the extra compensation fixed by law.

Under the evidence they are each entitled to $129.68, plus penalty of 100%.

O. A. Owens was a pumper. He had a contract of employment by which he was to receive $110 per month. This had been a flat salary up to the time that the law took effect. He was then advised that he was to work for 10 hours per day, but would still receive the $110, and for the work beyond the 10 hours he would get overtime for that. He testified: "I was advised of this arrangement out on the yard and told if it was not satisfactory to go to the office and discuss it. I never went to the office, but thereafter made out my time cards at ten hours per day, $110.-00 per month." This $110 on a 10-hour basis the Court finds to be simply a basis of computing compensation by the hour. The claimant, who testified, stated that when he did not work 10 hours a day he received pay for only the hours that he did work. He understood that the increasing of the hours had the effect of lowering the compensation per hour.

■ The court is, therefore, of the opinion and finds that under his contract of employment the claimant Owens fully understood and agreed to the new schedule of hours and rate of pay, and that with full understanding as to how he was being paid, he accepted his checks and that there was a valid and binding contract on the basis of hours and rates of pay after October 24, 1938, and that he would not be entitled to recover anything on that basis. We think that if it be construed that he was working on the basis of $110 per month, 10 hours per day, seven days per week, that he was fully paid all he is entitled to under such contract.

■ The right to contract is not only sacred in law, but is indispensable to commerce, and its use appeals alike to both employer and employee.

By the laws of Texas, 10% is made the maximum rate of interest for the use of money. Vernon's Ann.Civ.St.Tex. art. 5071. Under the act of Congress now before us, 25¢ per hour is made the minimum wage. 29 U.S.C.A. § 206. Parties may contract as before, but employers of labor must not pay less than 25¢ per hour, and the lender of money must not charge more than 10% for its use.

■ In this case each of the plaintiffs entered into a contract with his employer. Insofar as these contracts did not violate the wage and hour law, they are valid and binding upon both parties.

Parties in making contracts naturally take into consideration the character of the business and the ability of parties. The complainants were all men of understanding and well above the average in intelligence. They understood the nature of their employer's business and their own need of employment. The employer was an independent refinery of the smaller class. It has been shut down, as have most small refineries; they seem not to be able to compete successfully with large concerns with mass production and patented processes owned by major concerns who seem able to extract a higher percentage of gasoline from the crude oil, and produce by-products out of range of a small concern. We doubt if the wage and hour law was designed for cases like the one now before us. With this situation in mind, when the law became effective, there was in this case no effort to evade or conceal upon the part of either party. They adjusted themselves to it as they understood it and continued much as they had before. The new arrangement would in one case be within the law and the next one without.

■ We have had some difficulty with the question of penalty. Should the defendant be so penalized in the absence of bad faith and without a wilful intent to break the law? One who secretes and withholds from another his money is penalized into paying the highest legal rate permitted by law. Thus in Texas he must pay 10% for its use rather than 6%, as allowed in open, legitimate claims. One whose timber is wilfully cut and carried away may recover its value in the lumber or furniture into which it may be processed. Likewise, under the statutes of this State, one who holds for collection a policy of life insurance may recover a penalty of 12% in addition to attorney's fees. All these penalties are collectible only where defendant has unjustly and wilfully or criminally wronged the complainant. Indeed, penalties are a specie of punishment for wrongdoing and are not looked upon with favor.

■ It is not, however, within the province of the courts to shape the public policy of the nation; this is a prerogative of Congress. The Act is plain and unambiguous and must be understood as written.