**THOMPSON v. DAUGHERTY.**

Civil Action No. 7.

District Court, D. Maryland.

July 26, 1941.

Clarence Lippel, of Cumberland, Md., for plaintiff.

Edward J. Ryan, of Cumberland, Md., for defendant.

CHESNUT, District Judge.

This is a private suit by an employe against his employer based on the Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b). The jurisdiction of the court is based on 28 U.S.C.A. § 41(8) and section 16(b) of the Act of 1938. Robertson v. Argus Hosiery Mills, 6 Cir., June 25, 1941, 121 F.2d 285; Missel v. Overnight M. T. Co., D.C.Md., 36 F.Supp. 980, Judge Coleman; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. The case was tried to the court without a jury. I find the facts to be as follows:

1. The defendant, Emmett A. Daugherty, is a citizen of Cumberland, Maryland, who, in 1937, made a contract with the United States Government to collect and deliver United States mail from and between the post office in Cumberland, Maryland, and the local railroad stations for the period of four years from July 1, 1937, at an annual compensation of $4,254, with the obligation on his part to furnish three trucks and two full-time men and one part-time man.

2. On October 3, 1938 Daugherty employed Thompson as one of the full-time men under this contract, Daugherty himself performing the services of another full-time man. Thompson had previously for some time been out of work and had applied to Daugherty for a job. The wages agreed to be paid Thompson at first were $60 a month which was entirely acceptable to Thompson. His duties were to report at the local post office at 11.40 P. M. each night and drive the truck carrying the mail between the post office and the railroad stations for all trains arriving and leaving until and including the one leaving at 8.24 A. M., the next morning. During the night between one and two o'clock A. M., Thompson was unoccupied in a consecutive period of one and three-quarters hours, during which he was entirely free. As he lived some distance from the post office he customarily spent the time there and was free to spend the time in sleeping or reading or otherwise at his option. He continued in the employment until January 7, 1941, when he secured a better position. During the period of his employment by Daugherty the latter raised his salary several times until it was finally at the rate of $75 per month. Shortly before leaving his employment, about Christmas time 1940 when the mail was heavy, he requested extra compensation of $21 which Daugherty declined to pay, calling his attention to the fact that he, Daugherty, had on numerous occasions performed Thompson's work for him when the latter was sick or away without making any deductions from his weekly pay. During 1940 Thompson corresponded with the Fair Labor Standards Bureau with respect to whether he was not entitled to extra compensation under the Act in view of the circumstances of his employment. But he made no request at any time to Daugherty for increased compensation until six weeks after he left the employment, and this suit was promptly thereafter filed March 12, 1941. Daugherty in good faith thought he was not subject to the Act.

3. Daugherty's services were entirely performed in the City of Cumberland in the County of Alleghany in the State of Maryland. Under his contract he or his employe received the mail sacks from the postal employes at the post office in Cumberland, loaded them into the truck, and then the truck was driven by Thompson or Daugherty to the railroad stations. Similarly the mail coming off the incoming trains was delivered to Daugherty's truck and loaded on it by Daugherty or Thompson. Daugherty met trains arriving or leaving Cumberland between about 8.30 A. M., and 11 P. M. His part-time employe met one midday train whose schedule conflicted with other trains served by Daugherty. The distance between the post office and the railroad stations was less than about half a mile. The railroads carried interstate mail.

4. Counsel have stipulated that the maximum basic sum, if any, recoverable by the plaintiff, under the schedule of compensation provided for in the Act, is $488.16, for 588 hours over-time, if the "waiting time" of an hour and three-quarters above referred to is not deducted, but if the latter is properly deductible, then the maximum basic amount of recovery under the Act is $252. But in addition the plaintiff demands under 29 U.S.C.A. § 216(b), an "additional equal amount as liquidated damages" and also a reasonable attorney's fee for the plaintiff's attorney to be paid by the defendant.

5. The contract price received by Daugherty from the Government, after paying the wages of his employes, and other expenses, was sufficient to leave him a net sum of only about $24 a week.

Counsel for the parties also stipulated that all errors in pleading should be regarded as waived and the case submitted to the court on its merits on the law and facts as found.

On these facts it appears that if the plaintiff's claim is well founded there will be a resulting hardship to the defendant. The defendant's contract with the Government for carrying the mails in Cumberland was made long before the effective date of the Act. The contract has not been offered in evidence but it presumably was made under and subject to the provisions of Title 39, United States Code Annotated, ch. 12, §§ 421 to 451, which regulate the subject matter of "Contracts for Carrying the Mails". The award of the contract was made to the plaintiff as the lowest bidder, and presumably was based on estimated expenses without knowledge of increase of wages which might be required under the future Act. The plaintiff, being out of employment at the time, sought employment from the defendant at the rate of compensation thoroughly acceptable to himself, and his wages were subsequently voluntarily increased from time to time by the defendant. During all the time the plaintiff was employed he gave no intimation to his employer that he was or would be entitled to over-time pay under the Act and finally voluntarily left the employment only when he secured a better position. If the defendant is required to pay the amount now claimed by the plaintiff the result will be that his own net compensation for the same kind and amount of service will probably be less than that received by the plaintiff.

However, it is proverbial that "hard cases make bad law", and therefore the problem in this case is to determine what is the applicable law, irrespective of the possible resulting hardship to the defendant. The plaintiff contends that his case is squarely within the provisions of section 207 of 29 U.S.C.A. That section provides that the rate of compensation for over-time (as defined therein) shall be—"* * * at a rate not less than one and one-half times the regular rate at which he is employed". The parties have stipulated the applicable aggregate sums to be determined, as affected by the contingent finding above mentioned. The requirement for the extra rate of compensation for over-time is by the section applicable only to employes who are "engaged in commerce or in the production of goods for commerce". It is not contended in this case that the plaintiff was engaged in the production of goods for commerce, but it is contended that he was engaged in commerce. "Commerce" is defined in section 203(b) as follows: "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States, or from any State to any place outside thereof."

■ The defendant's principal contention as to the non-applicability of the Act is that the plaintiff was not engaged in commerce within the meaning of this definition. It is true the activities of the plaintiff were wholly within the City of Cumberland, in the State of Maryland, but they constituted assistance in the transportation of interstate mail. It seems quite clear therefore that the plaintiff was engaged in commerce within the meaning of the Act. It is, of course, now well understood, from recent decisions of the Supreme Court, that the concept of interstate commerce has been much broadened in recent years, especially in the application of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Fair Labor Standards Act, both of which are based on the interstate commerce power of Congress. But apart from these later decisions, it also seems clear enough, from earlier decisions of the Supreme Court, that the plaintiff's activity was necessarily a part of interstate commerce. Binderup v. Pathe Exchange, Inc., 263 U.S. 291, 309, 44 S.Ct. 96, 68 L.Ed. 308; Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 49 L.Ed. 518; Stafford v. Wallace, 258 U.S. 495, 516, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Labor Board v. Jones & Laughlin Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Puget Sound Stevedoring Co. v. State Tax Comm. 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68. In N.L.R.B. v. Carroll, 120 F.2d 457, 458, the First Circuit Court of Appeals in a per curiam opinion filed June 11, 1941, held that a contract mail carrier engaged in the transportation of mail by contract to and from the United States Post Office at Lynn, Mass., and other nearby places, in the State, was subject to the National Labor Relations Act, and remarked in a note that—"The record contains ample evidence of the interstate character of the large volume of mail transported by respondent pursuant to the contract." The Administrator of the F.L.S.A. has also taken the same position in his

Interpretative Bulletin No. 9, par. 8(c) (1941).

◼ By sections 203(d) and (e) of 29 U.S.C.A., employes of the United States are not subject to the provisions of the Act. Therefore if Thompson or Daugherty could porperly be considered an employe of the United States, the Act would not be applicable to this case. However, there is no doubt, as a matter of strict law, that the status of Daugherty in relation to the United States was that of an independent contractor, and neither he nor his employes can properly be regarded as employes of the United States. It was so held in N.L.R.B. v. Carroll, supra, and likewise under similar circumstances in Fleming, Administrator v. Gregory, D.C.La., 36 F.Supp. 776.

◼ Defendant also contends that he is not subject to the Act by reason of the provision of section 213(b) which reads: "The provisions of section 207 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission *has power* to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49." (Italics supplied.) The defendant says that the Interstate Commerce Commission did have the *power* to establish maximum hours of service for his employes, although the Commission did not in fact do so. See Faulkner v. Little Rock Co., D.C., 32 F.Supp. 590; Bechtel v. Stillwater Co., D.C., 33 F.Supp. 1010; Gerdert v. Certified P. & E. Co., D.C., 38 F.Supp. 964, 965. This contention necessitates consideration of the Motor Carrier Act of 1935, 49 U.S.C.A. ch. 8, §§ 301 to 327 (and particularly sections 304, 309 and 318), which provides for the regulation of interstate transportation by motor carriers, whether common carriers, private carriers or contract carriers. The definition of these three classes of carriers is given in section 303. By subparagraph 15 "contract carrier" is defined as—"* * * any person, not included under paragraph (14) of this section [defining common carrier], who or which, under special and individual contracts or agreements, and whether directly or by a lease or any other arrangement, transports passengers *or property* in interstate or foreign commerce by motor vehicle for compensation." (Italics supplied) And section 304(a) (2) makes it the duty of the Commission— "To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and *maximum hours of service of employees,* and safety of operation and equipment." (Italics supplied)

The precise question therefore is whether a "contract *mail* carrier", operating motor trucks engaged exclusively in the carriage of interstate mail, under contract with the United States, is a "contract carrier" within the meaning of the Motor Carrier Act. The Commission itself in an early case held to the contrary. Atchison, T. & S. F. R. Co., Vol. 3, Motor Carrier Cases pp. 694, 697, where it was said: "The transportation of mail under contract with the Post Office Department in vehicles used exclusively for that purpose is not subject to the requirements of the Act; nor do we believe that special authorization is necessary to permit common or contract carriers by motor vehicle to transport mail in the same vehicle with property moving in interstate or foreign commerce." It may be suggested from a reading of the whole case, that the particular announcement, with respect to contract mail carriers, was not really necessary to the decision; but I am not aware of any subsequent departure by the Commission from the view there expressed. Apparently influenced largely by this view of the Interstate Commerce Commission, the Administrator of the F.L.S.A., in his Interpretative Bulletin No. 9, paragraph 8(c) has announced that contract mail carriers are not within the exemption provided by section 213(b) (1) of 29 U.S.C.A.; and also that they are engaged in interstate commerce within the meaning of the Act, and therefore they are entitled to over-time compensation under section 207 of 29 U.S.C.A. These interpretative rulings of the Commission and the Administrator, while not binding upon the courts, are of course entitled to great weight as the Supreme Court has pointed out in United States v. American Trucking Ass'ns, 310 U.S. 534, at page 549, 60 S.Ct. 1059, at page 1067, 84 L.Ed. 1345, where it was also said: "This is peculiarly true here where the interpretations involve 'contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' Further-

more, the Commission's interpretation gains much persuasiveness from the fact that it was the Commission which suggested the provisions' enactment to Congress."

The expression of the Commission in the Atchison case, that contract mail carriers using motor vehicles exclusively for the carriage of mails are not subject to the Motor Carrier Act, it will be noted, was made shortly after the Act went into effect, and therefore the above quotation from the American Trucking Co. case is particularly applicable.

█ The Commission apparently thought it unnecessary to support its opinion by explanatory reasoning, possibly because the legislation was quite recent and it may have been thought that its purposes were well known. Nevertheless the question of statutory construction now presented in this case is one of some difficulty. In this respect as well as in the nature of the legal question involved, the present case is like that of the American Trucking Co., supra, where there was great diversity of judicial opinion in both the District Court, 31 F. Supp. 35, and the Supreme Court. The problem of statutory construction here presented is quite similar to that involved in the former case, but there is here much less legal factual material on which to base the decision. Counsel have not been able to refer me to any legislative history of the Motor Carrier Act that bears on the question. The definition of "contract carrier" given in the Act seems broad enough in its literal coverage to include contract carriers of mail by motor trucks, and it is possible to infer that there was need for regulation of maximum hours for drivers of the trucks in the interest of safety, which, as the Supreme Court has pointed out in the American Trucking Co. case, was the principal object of the Act. On the other hand it may be noted that only contract carriers of passengers or *property* are within the definition; and it may be thought that the word "property" is not particularly apt for the inclusion of mail, carried under contract with the Post Office Department of the Government, especially as section 308 (d) specifically mentions mail together with newspapers, baggage and express, as allowable articles to be carried under a certificate for the transportation of passengers.

Moreover the sections of the Motor Carrier Act which specifically define the powers of the Commission with respect to contract carriers, tend quite strongly to indicate that it was not within the intention of Congress to include contract mail carriers (whose duties and compensation are prescribed under contract with the Post Office Department usually after advertisement and competitive bidding) within the definition of "contract carriers" and thus largely transfer the supervision and regulation of the mail carrier from the Post Office Department to that of the Interstate Commerce Commission. Thus section 309, 49 U.S.C.A. provides generally that contract carriers must obtain permits from the Commission authorizing them to engage in such business; and section 318 requires them to file with the Commission and publish and keep open for public inspection, schedules or copies of contracts showing their charges and rates for services. These particular provisions seem inapplicable to contract mail carriers.

Considering the whole of the legislation it may well be doubted, apart from the Commission's own statement as to its lack of jurisdiction over contract mail carriers, that Congress intended in its definition of the term "contract carriers" in the Motor Carrier Act, to include the contract mail carrier engaged exclusively in that service. If it were clear that the Commission had the power to regulate the maximum hours of service of the defendant's employes, I would feel obliged to hold the defendant was not subject to the Fair Labor Standards Act; but as the defendant's claim to exemption is based on what is at best a very doubtful construction of the Motor Carrier Act, I think the interpretative rulings of the Commission and the Administrator should be given sufficient weight to resolve the doubt against the defendant's contention. I therefore hold that the defendant is not exempt under section 213(b) of 29 U.S.C.A.

█ Under the stipulation of counsel above referred to the plaintiff is entitled to an aggregate base compensation for over-time in the amount of $488.16 unless the "waiting time" referred to in the above findings of fact, is properly deductible. In this connection my attention is called to an Interpretative Bulletin entitled "Employers Digest", paragraph 18, put out by the Administrator of the F.L.S.A., which reads: " 'Waiting time' constitutes time worked and must be regarded as such whenever an employe is required to be on duty, on the employer's premises, or at a prescribed work place, or when the time

is too short for the employe to spend it for his own purposes." See also Interpretative Bulletin No. 13, paragraphs 4 and 5.

In view of the special facts of this case I conclude that the so-called "waiting time" should fairly be deducted in this case in the computation of the whole over-time. The interval was a continuous one of an hour and three-quarters, between trains, in which the employe was entirely free to follow his own personal activities. During this interval he was not required to be at a particular place and the nature of his service was such that he was not subject to ·immediate call during the interval. It results that the base amount for over-time to which the plaintiff is entitled is $252.

■ The remaining question is whether the plaintiff is also entitled to double this amount as "liquidated damages". Section 216(b), 29 U.S.C.A. provides: "Any employer who violates the provisions of section 206 or section 207 of this chapter shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional* equal amount as liquidated damages. * * * The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (Italics supplied)

The intrinsic nature of the additional allowance would seem to make it a penalty rather than properly liquidated damages, but however that may be, the wording of the statute is clearly mandatory and leaves no discretion in the court as to its allowance. It has been uniformly so held in many district court cases. Lewis v. Nailling, D.C., 36 F.Supp. 187; Lefevers v. General Export Co., D.C., 36 F.Supp. 838; Harrison v. Kansas City Terminal Co., D.C., 36 F.Supp. 434; Reeves v. Howard County Ref. Co., D.C., 33 F.Supp. 90; Morgan v. Atlantic Coast Line R. Co., D. C., 32 F.Supp. 617. Cf. Clour v. Jones, D.C.Okl., June 19, 1941.[1] If there were any discretion permissible, I would not think it proper to make the additional allowance on the facts of this particular case.

I am therefore constrained to allow the plaintiff a judgment for $504.

The statute also requires the allowance of a "reasonable attorney's fee to be paid by the defendant, and costs of the action". 29 U.S.C.A. § 216(b). In this case I think a fee of $100 to the plaintiff's attorney will be a reasonable amount.

The conclusion of law therefore is that the plaintiff is entitled to recover a judgment of $504, and in addition, the defendant will be required to pay costs of the suit and a fee to the plaintiff's attorney in the amount of $100. The clerk is instructed to enter judgment accordingly.

---

[1] No opinion for publication.