GIBSON *v.* GLASGOW *et al.*

(*Nashville*, December Term, 1941.)

Opinion filed January 17, 1942.

CHARLES L. NEELY and GRANVILLE FARRER, both of Memphis, for appellant.

ABE D. WALDAUER, of Memphis, and JEFF DAVIS, of El Dorado, Ark., for appellee Lion Oil Refining Co.

N. N. FOWLER, of Memphis, for appellees Glasgow and Lazarus.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the complainant under the Fair Labor Standards Act of 1938, 29 U. S. C. A., section 201 et seq., against defendants, his employers, to recover overtime compensation. The chancellor sustained a demurrer to the bill and the complainant has appealed.

The bill averred that complainant was in the employ of the defendants over a period beginning in September, 1937, and ending on May 15, 1940. That during said period defendants were engaged in commerce, within the meaning of the Federal Statute above mentioned, dealing in automobile tires, gasoline, motor oil, grease, and similar products. That defendants conducted a wholesale business and did no retail business at all.

The bill also avers that the complainant was employed as a truck driver, delivering goods from defendants' place of business located in Shelby County, Tennessee, to defendants' customers located in the same County and State. That complainant did not drive or operate said truck or distribute products sold by defendants to any

places other than those situated in Shelby County, Tennessee. It was further stated in the bill that during the time of complainant's employment by defendants his duties "consisted principally of the driving and operation of one of their trucks" in the manner aforesaid.

It further appeared from the bill that the complainant was called on by virtue of his employment to perform certain services in the course of defendants' business other than driving the truck. These additional services will be more particularly described hereinafter.

The bill included a detailed statement of the complainant's claim for overtime and sought a decree for the amount of same, together with a reasonable fee for his counsel.

The chancellor was of opinion that the complainant was excluded from the benefits of the Fair Labor Standards Act by reason of Title 29, Section 213(b), U. S. C. A., providing:

"The provisions of section 207 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; or (2) any employee of an employer subject to the provisions of [Part I of the Interstate Commerce Act.]"

Section 304 of Title 49, U. S. C. A., above mentioned, appears in the Motor Carrier Act of 1935. Under the Motor Carrier Act the Interstate Commerce Commission has authority to regulate the qualifications and maximum hours of employees of such carriers whose activities affect safety of operation. *United States* v. *American Trucking Association, Inc.*, 310 U. S., 534, 60 S. Ct., 1059. 84 L. Ed., 1345. Of course the driver of a truck is such an employee.

■ We do not agree, however, that the Interstate Commerce Commission was given authority by the Motor Carrier Act to regulate the qualifications and hours of service of this complainant in the capacity in which he was employed. It clearly appears from the statements of the bill that complainant did not operate his truck in interstate commerce. He transported goods from one point to another in Shelby County, Tennessee, not, so far as appears, in original packages. As a truck driver, recovery under the Fair Labor Standards Act must be denied to complainant under authority of *Brown* v. *Bailey,* 177 Tenn., 185, 147 S. W. (2d), 105.

■ The Motor Carrier Act Title 49, Section 302(b), U. S. C. A., applies only "to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation."

We have examined the authorities relied on by the defendants to sustain the court below, but, as we read those decisions dealing with truck drivers, most of such employees operated vehicles crossing State lines.

*Magaan* v. *Long's Baggage Transfer Co.* (D. C.), 39 F. Supp., 742, dealt with a truck driver operating a mail truck in the City of Lynchburg, Virginia. The truck operated only between the post office and the railroad station in that city, but it transported the United States mail, going from one State to another, and the vehicle was engaged in interstate commerce. Under similar circumstances in *Thompson* v. *Daugherty* (D. C.), 40 F. Supp., 279, the Court held that the driver of a mail truck operating in the City of Cumberland, Maryland, was entitled to the benefits of the Fair Labor Standards Act. Such benefits were denied the driver in the Magann

case by reason of Title 29, Section 213(b), U. S. C. A. *Thompson* v. *Daugherty* followed certain rulings of the Department of Labor with reference to the interpretation of the Fair Labor Standards Act.

 The particular nature of the employment of this complainant which takes him out of the jurisdiction of the Interstate Commerce Commission likewise deprives him of the benefits of the Fair Labor Standards Act—that is, in so far as he is regarded as a truck driver. An employee to obtain the benefit of the Fair Labor Standards Act must be engaged in *commerce,* and commerce ''means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.'' Title 29, U. S. C. A., section 203(b).

His truck driving being altogether in intrastate commerce, such activity gives the complainant no standing as a truck driver to invoke in his behalf the Fair Labor Standards Act. None of the cases cited by the complainant justifies awarding the benefits of that Statute to a truck driver exclusively engaged in intrastate commerce. This brings us to a consideration of the other activities of the complainant as they are stated in his bill, as follows:

''In addition to his duties as such truck driver, complainant also was required to and did assist the defendants in unloading oil and grease from freight cars to the defendants' warehouse on North Second Street in the City of Memphis; said freight cars being the property of common carriers who had transported said oil and grease in interstate commerce from other states to the defendants' said warehouse.

''Complainant was also required, when not otherwise

engaged, to load automobile tires and tubes for the defendants from said warehouse into motor carriers for delivery by said common carriers on behalf of the defendants to various dealers and places in the State of Mississippi and other parts of the State of Tennessee.''

The complainant was permitted to amend his bill by withdrawing the second paragraph just above quoted and substituting the following:

''Complainant was also required, as part of the duties of his employment, to load automobile tires, tubes and accessories from the warehouse of the defendants onto their loading platforms, or docks, where same were picked up by common carriers and delivered for the defendants to various dealers and places in the States of Mississippi and Tennessee.''

Obviously the additional duties performed by the complainant, as set out in the first paragraph quoted from his bill, would not make of him an employee whose qualifications and hours of service the Interstate Commerce Commission had authority to regulate under the Motor Carriers Act. These duties had nothing to do with motor vehicles, but consisted of unloading oil and grease from freight cars.

A railroad car remains in interstate commerce ordinarily, after arrival at its point of destination, until unloaded. *Texas Company* v. *Brown*, 258 U. S., 466, 42 S. Ct., 375, 66 L. Ed., 721. In unloading these freight cars, therefore, we think that the complainant was within the Fair Labor Standards Act, for ''an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occu-

pation necessary to the production thereof, in any State.'' Title 29 U. S. S. A., section 203(j).

■ Likewise we think that the complainant, as set out in the amended bill, came within the purview of the Fair Labor Standards Act while engaged in bringing goods from defendants' warehouse to their loading platforms to be picked up there by common carriers and transported into other States. Section 203(j) seems quite broad enough to include this activity.

■ It is true that the Interstate Commerce Commission has ruled that it had authority to regulate the qualifications and hours of service of loaders of motor carriers. In the Matter of Maximum Hours of Service of Motor Carrier Employees, Ex Parte No. MC-2, March 4, 1941. This because safety of transportation was affected by the manner in which trucks were loaded, as set out in the opinion of the Commission. The complainant here, however, seemed to have no part in the actual loading of any motor vehicle.

■ The complainant concedes that an employee, who claims the benefits of the Fair Labor Standards Act, must show that a substantial portion of his time was devoted to the production of goods in commerce, as that term is defined in said Act. Complainant's bill in so many words avers that ''his duties consisted principally'' in in the driving of this truck in intrastate commerce. There is no showing as to how much of his time was occupied in unloading goods from freight cars and in placing goods on defendants' platforms to be shipped in interstate commerce. If these latter activities were only occasional or unusual, under concession of counsel, the complainant would not be entitled to recovery herein.

■ We think this case should not go off on demurrer.

An answer to the bill should be filed and the facts of the case fully developed in order to show just what duties the complainant performs apart from driving his truck in intrastate commerce.

For the reasons stated, the decree of the chancellor will be reversed and the cause remanded for answer and further proceedings. The costs of appeal will be divided and the costs below will await the outcome of the case.