JOHNSON v. GREAT NAT. LIFE INS. CO.

No. 13310.

Court of Civil Appeals of Texas. Dallas.

Nov. 20, 1942.

Rehearing Denied Dec. 18, 1942.

MacMaster & MacMaster, of Dallas, for appellant.

Webster Atwell and John A. Pace, both of Dallas, for appellee.

YOUNG, Justice.

The primary question involved on this appeal is whether appellant, as janitor of an office building, occupied by the usual class of tenants, whose employer was not engaged in interstate commerce, or production of goods for interstate commerce, and,

at most, only about 20 per cent of the floor space was occupied by tenants engaged in business outside the state of Texas, is subject to the provisions of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. Jurisdiction of this question is conferred upon the state courts by Sec. 16(b) of the Act, and the amount involved is within the jurisdiction of the district court. On hearing before the trial court judgment was entered in favor of the defendant.

The cause was submitted on a stipulated agreement of facts showing that the defendant, Great National Life Insurance Company, is a corporation engaged in the general insurance business exclusively within the limits of Texas; that it owns and operates an eight-story office building in the City of Dallas, Texas, in which it does business; that it employs elevator operators, porters, watchmen, and an engineer to service and maintain the building; that such employes are hired, paid, and controlled exclusively by the defendant, and are subject to discharge by the defendant only; that the plaintiff is a former porter, employed by the defendant in general porter work, cleaning the offices of the various tenants of the building.

The first or ground floor of the building, with the exception of the lobby, was not furnished with janitor or porter service, but was rented to two retail establishments, one being a men's general mercantile store and the other a men's store. The defendant occupied the rear part of the eighth floor, and approximately 20 per cent of the floor space of the building was rented as offices to various tenants, some of whom were engaged in both interstate and intrastate business. No goods were produced, manufactured, mined, handled, or in any manner processed in or about the building. Three of the tenants, Beer & Company, "Tex" Harvey Oil Company and American Maracaibo Company, occupied approximately 8 per cent of the office space, and were concededly engaged in interstate activities, classed as interstate commerce; one received orders, transmitted and consummated trades by wire; another produced oil from wells in Texas oil fields and delivered it to major oil companies at their pipelines, and the third sold oil products from its wells in Texas to major oil companies, and, in addition, contracted for the drilling of wells. The remaining office space was occupied by tenants,—attorneys, insurance agents, stock-

brokers, physicians, geologists, loan agents, contractors, architects, etc.; six of which were engaged in businesses which might, straining a point, be classed as interstate activities; namely: (1) Aero Insurance Underwriters, an association of some 36 fire and casualty insurance companies, policies issued from the Kansas City branch office; (2) Aerofin Corporation, a foreign corporation engaged in production of cooling and heating coils for air-conditioning and heating machinery, maintaining only a consulting engineer's office in the building; (3) Home Insurance Company maintained a branch office only in the building, issuing policies of insurance on Texas risks; (4) Richard Lett, an insurance salesman, doing business as "Lett Insurance Agency"; wrote local insurance for five or six companies, and was the local representative for three foreign corporations doing business in Texas; (5) Agricultural Trade Relations, a foreign corporation with permit to do business in Texas, primarily interested in promoting good will of farmers and agriculturists for chain stores, compiling statistics, promoting lectures on farm activities and distributing literature with view of furthering good will; maintained a branch office only in the building, its main office being in the State of California; the branch office had no contracts with any chain stores; and (6) Southern Engine & Pump Company, sales organization with contracts as representative of certain manufacturers of engine and pump equipment for Texas territory; its main office was at Houston, Texas, where its supply stock was kept, the local office was merely a sales agency.

It is further stipulated that Lloyd Johnson, Jr. was employed by the Great National Life Insurance Company on February 8, 1939, as a day laborer and on May 15, 1939, began janitor work; that he worked sixty hours each work week, receiving therefor wages at the rate of $.245 per hour.

Sections 6 and 7 of the Fair Labor Standards Act, supra, provide for the payment of prescribed minimum wages and overtime compensation to employes "engaged in commerce or in the production of goods 'for commerce"; Sec. 3(b) defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." Sec. 3(e) defines "employee" as "any individual employed by an employer."; Sec. 3(i) defines "goods" as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof * * *"; Sec. 3(j) defines "produced" as "produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." Sec. 13(a) (2) renders the provisions of Secs. 6 and 7 inapplicable to "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

It will be observed that the Act is applicable to every employe "employed by an employer" and who is "engaged in commerce or in the production of goods for commerce," or engaged "in any process or occupation necessary to the production thereof," hence an employe seeking the beneficent benefits of the Act must bring himself and his employment clearly within its terms. Indeed, the plaintiff was employed by the defendant, and if it can be said that the defendant was engaged in commerce, or in the production of goods for commerce, as defined by the Act, then it might also be said that the plaintiff was, in a measure, engaged in commerce activities. The Act limits the employe to the activities of his employer who contributes to the production of goods for interstate commerce.

We are unable to relate how the work of a janitor in an exclusive office building could contribute to the production, or movement, or flow of goods in interstate commerce, where no such goods were produced; or that an employer could be engaged in commerce when he only produced a means (an office building) to produce money under rental contracts—a service establishment, for the convenience and hire of tenants, and that, too, for a few occupying only 8 per cent of the floor space, who are engaged in interstate communications, or who are engaged in subjects of commerce. In the case at bar, no goods were produced, manufactured, mined, handled, or in any manner worked on or processed in the building, and the communications in relation thereto were carried on by outside agencies. The plain-

tiff, as porter or janitor, had nothing whatever to do with the business affairs of his employer, or of the tenants, other than the usual janitor service in office buildings. The building in which plaintiff was engaged was not a subject of commerce, and the money it produced from rents could not be classed as "goods," although of the greatest value; nor can it be said that the janitor service, cleaning the dust, waste, rubbish and garbage, if any, from the offices of tenants who were engaged in commerce, was an occupation necessary to the production or communications of such tenants.

■■ In Sunshine Mining Co. v. Carver, D.C., 34 F.Supp. 274, 277, it is said, "The expressions 'produced' and 'goods' in the Act indicate that Congress intended the Act to apply to employees engaged in producing goods which are processed further or changed as to form by other persons before going into interstate commerce and the employee who produces goods which form an ingredient or part of other goods which go into interstate commerce is 'engaged in the production of goods for interstate commerce.'" So, in the case at bar, the stipulated agreement relates that the sole business of the defendant was intrastate, owning the building and renting it to tenants, keeping it in good order and condition for the convenience of local tenants through janitor service. The owner was not engaged in the "production of goods"; nor was the janitor, because forsooth some tenants were engaged in interstate business. Therefore, the janitor was not entitled to protection of the Fair Labor Standards Act.

Under similar facts as here related, the Supreme Court of Tennessee, in Robinson v. Massachusetts Mut. Life Ins. Co., 158 S.W.2d 441, citing authorities, held that the employes were not protected under the Act. There are some authorities expressing contrary views (Fleming v. A. B. Kirschbaum Co., D.C., 38 F.Supp. 204; Lorenzetti v. American Trust Co. et al., D.C., 45 F.Supp. 128; Stoike v. First National Bank of N. Y., 264 App.Div. 585, 36 N.Y.S.2d 390), but we believe the better reason is expressed in the authorities, holding to the effect that a janitor or elevator operator performing no greater service than is here related, is not protected under the Fair Labor Standards Act.

The judgment of the court below is affirmed.

### On Motion for Rehearing.

Appellant urges the controlling effect of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, but we see a clear distinction between that case and the instant facts. In the decision just cited, the buildings involved were structures known to the trade as "loft buildings," in which practically all of the tenants were engaged in the manufacture of goods for commerce. That appeal dealt with employees engaged in an occupation necessary for production for commerce, whereas, there is no production involved in the case at bar.

■■ Moreover, the rule has been lately announced that an employe claiming benefit of the Fair Labor Standards Act must show what part of his overtime work was performed in interstate commerce; and as to this, plaintiff adduced no testimony. In White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92, 94, Judge Hutcheson, discussing the judgment before the Circuit Court, said: "* * * I think it clear that it must be reversed, because of the complete failure of the proof to show how much of the work done by the plaintiff was in interstate and how much was in intrastate commerce. There was some testimony that some of the plaintiffs did some work in 'commerce.' But it is clear that by far the greater part of the work done by them was not. An employee doing work both in inter- and in intra-state commerce must point out, with sufficient definiteness to rest a finding on what part of his work was in interstate and what part in intrastate commerce. * * *"

See, also, Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Camfield v. West Texas Utilities Co., D.C., 44 F. Supp. 847.

Appellant's motion for rehearing is overruled.