**GREEN et, Plaintiffs, v. BUCKEYE STATE BUILDING & LOAN CO., Defendant.**

Common Pleas Court, Franklin County.

No. 164,225. Decided December 20, 1943.

Messrs. Adams & Rapp, Columbus, Messrs. Holmes, Lewis & Menendez, Columbus, and Mr. Robert D. Myers, Columbus, for plaintiffs.

Messrs. Wilson & Rector, Columbus, for defendant.

## OPINION

By LEACH, J.

The defendant is a Building and Loan Company, organized under the laws of Ohio and owns and operates an office building at 42 East Gay Street in Columbus, Ohio. The company has its banking room on the first floor of said building. Other space is rented and leased to various tenants, among others being The Ohio Bell Telephone Company, American Bonding Company, Capital Finance Corporation, John Hancock Mutual Life Insurance Company, The New Testament League, The Thomas Hair System and the P. F. Collier Company.

The plaintiffs and other persons mentioned in the first paragraph of the second amended petition were at various times between 1938 and 1941 employees of the defendant as janitors, cleaners, elevator operators, porters, etc., and they bring this action to recover under the provisions of the Act of Congress known as the Fair Labor Standards Act, 52 Stat., 1060, 29 USCA 201 et seq., for overtime, liquidated damages aond attorneys' fee. A jury was waived and the cause tried and submitted to the court.

Title 29, Section 206, U. S. Code defines who are covered by the Act as follows:

"Every employer shall pay to each of his employees who is engaged in Commerce or in the production of goods for Commerce, wages at the following rates * * *".

So the questions under the act are primarily, "Is the **individual employee** engaged in interstate commerce or the production of goods for interstate commerce"?

For decisions so holding, see: Gavril v. Kraft Cheese Co., 42 Fed. Supp. 702; Veazy Drug Co. v. Fleming, 42 Fed. Supp. 701; Baggett v. Henry Fisher Packing Co., 37 Fed. Supp. 670; Gibson v. Glascow, 157 S. W. (2d) 814; Warren-Bradshaw Drilling Co. v. Hall, 63 S. Ct. 125, 126; Jax Beer Co. v. Redfern, 124 Fed. (2d) 172; Swift & Co. v. Wilkerson, 124 Fed. (2d) 176; Kirschbaum Co. v. Walling, 316 U. S. 517; McLeod v. Threlkeld, 319 U. S. 491.

While the evidence in this case shows that some of the tenants in the building are to some extent engaged in interstate commerce it does not, in the court's opinion, disclose that any "goods for commerce" are produced in said building either by the ten-

ants or by the defendant owner of the building; this fact distinguishes the case from the case of Kirschbaum v. Walling, 316 U. S. 517, the first syllabus of which is as follows:

"The Fair Labor Standards Act of 1938 held applicable to employees engaged in the maintenance and operation of a building whose tenants are engaged principally in the production of goods for interstate commerce."

While it may be true that in a limited way drawings are produced in the building by The Ohio Bell Telephone Company, said drawings are for its own use and are not sent to or used by any other person or company, and so there is no intercourse with relation thereto; and even as to these there is no showing that any of them are sent out of the state.

While The Ohio Bell Telephone Company is engaged in the telephoning of messages, such activities are not housed in the building in question, and the plaintiff employees do not come into contact in any way with such message business of The Ohio Bell Telephone Co., which fact clearly distinguishes this case from the case of Lenroot, etc. v. Western Union Telegraph Co., No. 19-78, Oct. 7, 1943, U. S. District Court, Southern District of New York. Said case is the only case cited to the court in the brief of counsel for plaintiffs in addition to the Kirschbaum case.

The Lenroot case was an action to enjoin the defendant from violating the provisions of Section 15 (a) (4) of the Fair Labor Standards Act of 1938. The violations alleged were that defendant had been engaged in shipping telegraph messages in interstate commerce and in delivering telegraph messages for shipment in interstate commerce, such messages having been produced in its establishments in which oppressive child labor was employed; and that defendant employed in its establishments minors under 16 years of age and also employed in its establishments minors between 16 and 18 years of age in the occupation of motor vehicle drivers; the large majority of the minors so employed were telegraph messengers and used bicycles; a smaller number performed their duties on foot; a still lesser number operated motor vehicles. It will thus be seen that there is no parallel between the Lenroot case and the pending case.

It has been held that:

"Janitors, engineers, elevator operators, and other maintenance and service employees of national banking corporation are not en-

■ gaged in 'interstate commerce' or in the 'production of goods for commerce' within the hours provision of the Fair Labor Standards Act, even if the corporation is engaged in interstate commerce, where the corporation occupies about one-third of its 22 story building, and the remainder of the building consisting of office space is rented to a large number of tenants." Brandell et, v. Continental Illinois Nat. Bank & Trust Co., of Chicago, 43 Fed. Supp. 781.

Decisions to substantially similar effect have been made in Cochran v. Florida Nat. Bldg. Corp., 45 Féd. Supp. 830; Johnson et v. Dallas Downtown Development Co., 132 Fed. (2d) 287; Stoike v. First Nat. Bank of New York, 48 N. E. (2d) 482.

It appears and is to be deduced from the evidence that the major portion of the time of the plaintiffs as employees of the defendant was taken up in performing their usual duties as janitors, porters, cleaners and elevator operators, but it also appears from the evidence that The Collier Company and The New Testament League, tenants in the building, would from time to time have packages or boxes shipped to them from outside the state. Such packages or boxes would be delivered to a storage room in the building by the transportation agency, and then some one or more of plaintiffs would take such packages or boxes to the elevator and deliver them to the offices or rooms in the building occupied by the respective tenants. This was a part of the service rendered to the tenants by the defendant as owner and operator of the building and performed by some one or more of plaintiffs from time to time as incidental to their employment. The extent of these shipments is not very clear, and the time taken up by any individual plaintiff in this part of their work or by all of them collectively does not appear in the evidence at all.

It is sought to distinguish the cases last above cited by the circumstance that such packages and boxes were carried to the elevator and then upstairs to said tenants by some, or possibly all of the plaintiffs at different times, and so to lay the foundation for a holding that such employees were "engaged in (interstate) commerce".

This question was considered and determined by the Hamilton County Court of Appeals in an opinion dated November 17, 1941, in the case of Cecil et v Gradison et, Trustees, etc., reported, 4 W. H. R. 698. This was an action by employees to recover under the Fair Labor Standards Act for overtime. The trial court sustained a demurrer to the amended petition and rendered judgment for defendants. That judgment was affirmed by the Court of Appeals. The amended petition alleged that defendant owned premises known as

406 Elm Street, Cincinnati, Ohio, in which they maintained, operated, managed and directed the Peoples Bank located in a part of said building. One of the plaintiffs was employed as a janitor and the other as an engineer and each was required to operate the elevators. in the building, both freight and passenger; that said employees. were caused to handle shipments of all and varied kind- and description, such as packages, cartons, card-board and wooden cases,. heavy and light boxes; that such shipments were constantly transported, forwarded and shipped to persons and corporations in other cities beyond the boundaries of the state of Ohio; that such activities. were in the furtherance of the employer's business and without them. the packages, etc., moving **into and out** of the building and **into and from** the various tenants on the various floors could not have been. transported up and down the elevators, etc.

The Court of Appeals, in its decision, cited the case of State ex. rel. Pennsylvania Railroad Co., v. Knight, 192 U. S. 21 in which the Supreme Court of the United States held, in an opinion by Mr. Justice Brewer, that cab service maintained by the interstate railroad company to carry passengers to and from its terminus in New York—for which a separate charge was made—was not interstate commerce. At page 28 the Supreme Court said:

"If the cab which carries the passengers from the hotel to the ferry landing is engaged in interstate transportation, why is not the porter who carries the traveler's trunk from his room to the carriage so engaged? If the cab service is interstate transportation, are the drivers of the cabs and the dealers who supply hay and grain for the horses also engaged in interstate commerce? and where will the limit be placed?

"We are of the opinion that the cab service is an independent local service, **preliminary or subsequent** to any interstate transportation * * *."

It is interesting to note the great names of the members of the Supreme· Court at the time this decision was rendered; they were: Fuller, Chief Justice, Harlan, Brewer, Brown, White (later Chief Justice), Peckham, McKenna, Holmes and Day; and to note that there· was **no dissent.**

The Court of Appeals of Hamilton County after citing the Knight. case said:

"Therefore, where these plaintiffs, as employees of defendants,. handled articles for defendants and· their tenants, they were performing intra-state acts, **preceding and following** interstate transaction, **and were not engaged in interstate commerce.**"

With this conclusion we are in accord.

However, even if, by some tenuous process of argumentation, it could be held, that the plaintiffs, who handled some incoming packages and boxes after they had been delivered to the building by the interstate carrier, were thereby in interstate commerce, nevertheless, regulation of their compensation by Congress under the Constitution could not extend beyond the time during which they were so engaged; and this for the reason that their usual and ordinary work as janitors, cleaners, porters and elevator operators bore no relation, direct or remote, to interstate commerce. Recovery for any work, therefore, subject to Federal regulations as being in interstate commerce would necessitate proof as to the time so engaged as distinguished from the time when they were not so engaged, which proof is entirely lacking here.

"An employee suing under minimum wage provisions of Fair Labor Standards Act, and working in both interstate and intrastate commerce, must point out what part of his work was in intrastate and what part in interstate commerce." Syllabus 5, Super-Cold Southwest Co. v. McBride, Circuit Court of Appeals, Fifth Circuit, 124 Fed. (2d) 90.

In White Motor Co. v. Littleton, 124 Fed. (2d) at page 94, Hutcheson, Circuit Judge (specially concurring) said:

"In addition to the reason given in the opinion for reversing the judgment of the trial court, I think it clear that it must be reversed, because of the complete failure of the proof to show how much of the work done by the plaintiff was in interstate and how much in intrastate commerce. There was some testimony that some of the plaintiffs did some work in 'commerce'. But it is clear that by far the greater part of the work done by them was not. An employee doing work both in inter-and intra-state commerce must point out, with sufficient definiteness to rest a finding on what part of his work was in interstate and what part in intrastate commerce. Super-Cold Southwest v. McBride, 5 Cir., 124 Fed. (2d) 90. This the proof wholly failed to do."

Finding and judgment on the issues joined for defendant Exceptions.

Motion for new trial may be filed and overruled, with exceptions.