# SMITH v. LINDEN STATION et al.—191 S. W. (2d) 833.

Western Section. November 15, 1945.

Petition for Certiorari denied by Supreme Court, January 11, 1946.

Lindsey B. Phillips and W. H. Fisher, both of Memphis, for appellant.

W. Stuart McCloy and Lewis R. Donelson, III, both of Memphis, for appellee.

KETCHUM, J. The complainant sues for overtime pay, liquidated damages and attorneys' fees alleged to be due him under the provisions of the Fair Labor Standards Act of 1938, 29 U. S. C. A., sec. 201 et seq. The chancellor held that he did not come within the coverage of the Act and dismissed his bill, and he has appealed.

The complainant was employed by the defendant Linden Station as a night watchman from October 15, 1940, to September 1, 1943, for twelve hours a day, seven days a week, at a salary of $100 per month, which was less than the minimum wage fixed for employees engaged in interstate commerce or in the production of goods for commerce within the meaning of said Act. The only question we have to determine on this appeal is whether the complainant was engaged in the production of goods within the meaning of the Act during the time of his employment by the defendant.

The Linden Station was the owner of eight stores fronting on the west side of Front Street in Memphis and running back west to a track of the Illinois Central Railroad. Two of these stores are north of Linden Avenue and six are south of Linden. It rented these stores to tenants who used them for warehouse or storage purposes. Some of these tenants were engaged to some extent in interstate commerce or the production of goods for interstate commerce as well as intrastate commerce but there is no proof from which it can be determined what percentage of their business was in interstate commerce and what percentage was in intrastate commerce.

■ The only business of Linden Station was that of renting out its stores and collecting its rents. This is not engaging in commerce or in the production of goods for commerce. Robinson v. Mass. Mut. Life Ins. Co., Tenn. Sup., 158 S. W. (2d) 441, 444. In that case it is said:

"Where the sole business of building owner was limited to the leasing of space in its building to tenants, the maintenance of its building in good order and condition and rendering to its tenants, many of whom were engaged in the manufacture of goods for interstate commerce, the ordinary type of service customary in the operation of office building, the owner was not a 'manufacturing establishment' engaged in the 'production of goods for commerce', and therefore its employees were not entitled to protection of the Fair Labor Standards Act".

■ The complainant's duties were to patrol the outside of the buildings, protect them from fire and theft, and "pull" the ADT boxes once every hour during the night. He did not have access to the inside of the buildings and was not employed to render any service to the tenants of the defendant who occupied the buildings. He occasionally attended to the loading out of night shipments on trucks for some of the tenants, but this was by way of accommodation to the tenants and was not at all within the scope of his employment by the defendant.

Appellant urges the controlling effect of the cases of Kirschbaum and Arsenal Building Corporation v. Walling, 316 U. S. 517, 62 S. Ct. 1116, 1118, 86 L. Ed. 1638. These suits were brought by electricians, elevator operators, watchmen and porters in loft buildings, in one of which buildings the tenants manufactured and sold in commerce large quantities of men's clothing, and in the other large quantities of ladies' garments. The tenants

were engaged in the production of goods to be transported in interstate commerce. In holding that the complainants were entitled to the benefits of the Act, the court speaking through Mr. Justice Frankfurter said:

"These employees perform the customary duties of persons charged with the effective maintenance of a loft building. The engineer and the fireman produce heat, hot water, and steam necessary to the manufacturing operations. They keep elevators, radiators and fire sprinkler systems in repair. The electrician maintains the system which furnishes the tenants with light and power. The elevator operators run both the freight elevators which start and finish the interstate journeys of goods going from and coming to the tenants, and the passenger elevators which carry employees, customers, salesmen, and visitors. The watchmen protect the buildings from fire and theft. The carpenters repair the halls and stairways and other parts of the buildings commonly used by the tenants. The porters keep the buildings clean and habitable".

And in conclusion the court said:

"In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce' ".

Such is not the case here. Complainant's employment was not necessary for the production of goods for commerce. He rendered the tenants no service by virtue of his employment by the defendant. The occasions when he assisted in the handling of goods for them were admittedly infrequent, and his services were gratuitously rendered. In Gibson v. Glasgow, 178 Tenn. 273, 157 S. W.

(2d) 814, and in Connelly v. Hamilton Nat'l Bank, Tenn. 184 S. W. (2d) 173, 175, it was held that in order to bring the employee within the coverage of the Act the burden was upon him to show that a "substantial portion" of his time was devoted to the production of goods in commerce. Also to the same effect, see Johnson v. Great National Life Insurance Co., Tex. Civ. App., 166 S. W. (2d) 935, and White Motor Co. v. Littleton, 5 Cir., 124 F. (2d) 92, 94, where it is said:

"I think it clear that it (the judgment) must be reversed, because of the complete failure of the proof to show how much of the work done by plaintiff was in interstate and how much in intrastate commerce. There was some testimony that some of the plaintiffs did some work in 'commerce'. But it is clear that by far the greater part of the work done by them was not. An employe doing work both in inter- and intra-state commerce must point out, with sufficient definiteness to rest a finding on what part of his work was in interstate and what part in intrastate commerce".

In Connelly v. Hamilton National Bank, supra [184 S. W. (2d) 174], the plaintiff was the engineer who operated the heating plant in the building a part of which was occupied by the defendant as its banking house and the balance of which was leased "for offices to tenants, many of whom are engaged in commerce, or in the production of goods for commerce"; and in describing his duties the plaintiff avers "that he acts as a custodian and delivery man, receiving, watching and delivering goods shipped to the bank and to the tenants of the bank from without the State of Tennessee and that he is regularly and continuously engaged in spending from ⅓ of an hour to 1½ hours each day in the duties in connection

with such goods". In sustaining a demurrer to this declaration, the court said:

"It is apparent that the connection, if any, of the plaintiff with the production of goods in commerce is too remote, and the time and attention so required too inconsequential for legal consideration".

Our conclusion, upon a consideration of the record, is that the complainant has not carried the burden which the law imposes upon him to show that he comes within the coverage of the Act, and it results that the decree of the chancellor dismissing his bill will be affirmed at his cost.

Anderson, P. J., and Baptist, J., concur.